IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BLACKROCK, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-1002 (TSE/JFA) |
| ) | |
| BALCKROCK.COM, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on plaintiff's motion for default judgment against thirty-seven (37) defendant domain names pursuant to Federal Rule of Civil Procedure 55(b)(2). (Docket no. 15).[1] Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

**Procedural Background**

On September 6, 2022, plaintiff filed a complaint against thirty-nine (39) defendant domain names pursuant to the *in rem* provisions of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a). (Docket no. 1) ("Compl."). On September 6 and 7, 2022, plaintiff sent letters to the physical and email addresses provided by the registrant(s) of the defendant domain names notifying them that plaintiff had filed this action, attaching a copy of the complaint, and providing notice of plaintiff's intent to proceed *in rem*. (Docket no. 5-1, ¶¶ 6–7). Where the

---

[1] The complaint names 39 defendant domain names, but the domain names BLACKROCKCRYPTOBANK.com and BALCKROCK.com were transferred to plaintiff and voluntarily dismissed without prejudice. (Docket no. 9).

registrant(s) did not provide their addresses, plaintiff sent the letter to the registrar. (*Id.* ¶ 7). Plaintiff also sent separate notices through the online contact portals listed in the WhoIs records. (*Id.*).

On September 23, 2022, plaintiff filed a motion for service by publication. (Docket no. 4). The court granted the motion and entered an order requiring plaintiff to publish notice of this action. (Docket no. 8). Plaintiff sent a copy of the order to the email address of the registrant(s) of the defendant domain names, to the extent the registrant(s) made their email contact information available in the WhoIs records, as well as the online contact portal when identified in the WhoIs records. (Docket no. 11 ¶ 5). Plaintiff arranged for publication of notice of the action in *The Washington Times* on September 28, 2022. (*Id.* at 10; Docket no. 11-1).

On October 20, 2022, plaintiff requested an entry of default against the defendant domain names, which the Clerk of Court entered on October 21, 2022. (Docket nos. 12, 14). On November 2, 2022, plaintiff filed this motion for default judgment, a memorandum in support, and a notice of hearing for Friday, November 18, 2022 at 10:00 a.m. (Docket nos. 15–17).[2] Plaintiff included certificates of service with these pleadings indicating that notices of the filings were sent to the registrant(s) of the defendant domain names using the electronic contact information provided by the registrant(s) to the registrar. (Docket no. 15 at 3; Docket no. 16 at 16; Docket no. 17 at 2). At the hearing on Friday, November 18, 2022, counsel for plaintiff appeared, but no one appeared on behalf of the defendant domain names.

**Factual Background**

The following facts are established by the complaint and the memorandum in support of plaintiffs' motion for default judgment. (Compl.; Docket no. 16). Plaintiff is a corporation

---

[2] Plaintiff seeks dismissal of Count II of the complaint, which alleges trademark infringement, without prejudice. (Docket no. 16 at 1).

organized and existing under the laws of Delaware with a principal place of business in New York, NY. (Compl. ¶ 5). Plaintiff is currently the largest publicly traded investment management firm, and it has been using the BLACKROCK mark to promote its services since its founding in 1988. (Compl. ¶¶ 51, 53). Since 1997, plaintiff has been the registrant of the domain name BLACKROCK.com, which it has continuously used to promote its asset management services. (Compl. ¶ 58). Plaintiff also has acquired numerous other domain names that incorporate the BLACKROCK mark, some of which redirect to plaintiff's main website or country-specific sites, and others of which are held as a defensive measure to protect consumers by limiting cybersquatting of domain name registrations. (Compl. ¶ 59). Plaintiff also owns the statutory rights to multiple BLACKROCK formative marks by virtue of its U.S. trademark registrations. (Compl. ¶ 64).

The defendant domain names were registered for the purpose of, *inter alia*, obtaining internet visitors when such visitors were attempting to reach plaintiff's website. (Compl. ¶ 69). The defendant domain names use the BLACKROCK mark combined with descriptive term(s), a typographical error of the BLACKROCK mark, insertion of unnecessary grammar, or a combination of those tactics. (Compl. ¶¶ 7–23, 25–44, 68). Some of the webpages located at the defendant domain names have been configured to display pay-per-click links, redirect visitors to a third-party website for sales solicitation, download malware or bloatware, and/or for email services that could be used to impersonate plaintiff. (Compl. ¶¶ 71–73).

The defendant domain names do not reflect the legal name of the registrant(s), and the registrant(s) have not engaged in *bona fide* noncommercial or fair use of the BLACKROCK marks in a website accessible under the defendant domain names. (Compl. ¶¶ 75–76). Many of the registrants also provided material and misleading false contact information when applying for

3

and maintaining the registration for the defendant domain names in that the person or entity identified as the registrant is not the actual registrant of the domain names. (Compl. ¶ 79). Some of the registrants used services such as Domains by Proxy, LLC or the Withheld for Privacy ehf privacy service to conceal their identity. (Compl. ¶¶ 8–12, 14–23, 25–26, 30, 33–34, 37–38, 42, 44, 80). Other records contain no registrant name field, thereby concealing the identity of the registrants of the domain names. (Compl. ¶¶ 13, 27–29, 31–32, 35–36, 39–41, 43, 80). Only one of the registrants was identified by plaintiff—Guojianguang located in Beijing, China. (Compl. ¶ 7). Plaintiff alleges if the defendant domain names were registered by different people or entities, the registrants acted in concert given that groups of the defendant domain names were registered on the same date, have been registered with the same registrar, and/or resolve to reflect similar unlawful content. (Compl. ¶ 81).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure to plead or otherwise defend against this action, the Clerk of Court has entered a default as to the 37 defendant domain names. (Docket no. 14).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any

4

allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

## Joinder Under Federal Rule of Civil Procedure 20

As an initial matter, this proposed findings of fact and recommendations will address whether the 37 defendant domain names were joined properly as defendants in this action. Federal Rule of Civil Procedure 20(a)(2) directs that multiple defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). Thus, there are two tests that must be satisfied for a finding of proper joinder under Rule 20: first, a right to relief must be asserted against each defendant that relates to or arises out of the same transaction, occurrence, or series of transactions or occurrences; and second, a question of law or fact common to all defendants must arise in the suit. The Supreme Court has generally encouraged joinder of claims, parties, and remedies in order to "entertain[] the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

To satisfy the transaction or occurrence test under Rule 20(a)(2), there must be a logical relationship between the events giving rise to the cause of action against each defendant. Though this case is brought as an *in rem* action against 37 individual defendant domain names, plaintiff alleges that the claims set forth in the complaint arise out of the same series of transactions. Specifically, plaintiff alleges the defendant domain names were all registered or re-registered in the same series of registration transactions, which occurred in the same general time period, using the same methods of cybersquatting on the BLACKROCK mark, to unidentified

5

and/or foreign registrant(s). (Compl. ¶¶ 7–23, 25–44; Docket no. 16 at 8). Given these uncontested allegations, sufficient support has been presented to establish that this ACPA claim against the 37 defendant domain names satisfies Rule 20's "transaction or occurrence" test as articulated by the Supreme Court and the courts of this Circuit. As to the common question of fact or law, in this case, there is no question that the claims asserted by plaintiff against the 37 defendant domain names do involve common questions of law: the validity of plaintiff's trademarks and the illegal act of cybersquatting allegedly committed by each of the 37 defendant domain names.

In the alternative, the court has discretion to act *sua sponte* to, "on just terms, add or drop a party." Fed. R. Civ P. 21. Previously, this court has found that any defects to joinder may be disregarded when the joinder does not affect any party's substantial rights. *See Coach, Inc. v. 1941 Coachoutletstore.com*, 2012 WL 27918, at *4 (E.D. Va. Jan. 5, 2012) ("And, there is no prejudice to any defaulting defendant, whose liability may be established upon default irrespective of the presence of any other defendant. As a result, the Court finds that it must disregard any potential defects related to joinder, as they do not affect any party's substantial rights, and the Court's correction of those defects under Rule 21 would not be on just terms.") (internal citation and quotation marks omitted). Here, none of the defaulting defendant domain names are prejudiced by joinder, as their liability is established by their own default, not the default of any other defendant domain name. As such, joinder does not affect any of the defendant domain names' substantive rights.

For these reasons, the undersigned recommends a finding that joinder is appropriate as to the 37 defendant domain names.

### Jurisdiction and Venue

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. Plaintiff's claims arise under the ACPA, 15 U.S.C. § 1125(d), and this court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a). (Compl. ¶ 46).

This court has *in rem* jurisdiction over the defendant domain names under 15 U.S.C. § 1125(d)(2). The first required element for an *in rem* action over a domain name is that the domain name violates plaintiff's trademark rights. *See* 15 U.S.C. § 1125(d)(2)(A)(i). Plaintiff has made uncontested assertions that it has both common law trademark rights in the BLACKROCK mark and owns numerous trademark registrations in BLACKROCK formative marks, including registrations on the Principal Trademark Register of the U.S. Patent and Trademark Office. (Compl. ¶¶ 52–65). Plaintiff's mark is being violated by the unlawful registration and use of the defendant domain names that use the BLACKROCK mark without plaintiff's authorization. (Compl. ¶¶ 66–81).

The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner (a) is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in a civil action under the ACPA or (b) through due diligence cannot find the person who would have been a defendant in such an action, having sent a notice of the alleged violation and intent to sue to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar and publishing a notice of the action as the court may direct. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Given the uncontested assertion that the registrant field in the WhoIs records for the defendant domain names is either blank or reflects a privacy service, a fictitious person/entity, and/or an individual residing outside the United States, there is no evidence that

7

any of the actions of the registrant(s) would constitute sufficient minimum contacts to support personal jurisdiction. (Compl. ¶ 47). Even though the defendant domain names are included on the VeriSign, Inc. and Public Interest Registry registries, which are situated in this district, "this is not enough to establish minimum contacts." *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 615 (E.D. Va. 2003); (Compl. ¶ 49). Accordingly, plaintiff has established that it is unable to obtain personal jurisdiction over the registrant(s) of the defendant domain names who would otherwise have been the defendant(s) in this suit, satisfying the requirements of 15 U.S.C. § 1125(d)(2)(A)(ii)(I). Therefore, the court has *in rem* jurisdiction over the defendant domain names under 15 U.S.C. § 1125(d)(2).

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry, or other domain name authority that registered or assigned the domain name is located. VeriSign, Inc. ("VeriSign") is the registry operator for the .COM and .NET top level domain names, and VeriSign is located in this judicial district. (Compl. ¶ 49). Similarly, Public Interest Registry is the registry operator for the .ORG top level domain names, and it is also located in this district. (*Id.*) Because each of the defendant domain names are .COM, .NET, or .ORG domain names, their domain name registries are located in this district. Accordingly, venue is proper in this district.

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that the court has *in rem* jurisdiction over each of the defendant domain names, and that venue is proper in this court.

## Service

Rule 4(n)(1) provides that the court may assert service over property if authorized by a federal statute, and notice to claimants of the property must be given as provided in the statute or by serving a summons under this rule. 15 U.S.C. § 1125(d)(2)(B) states the actions outlined in § 1125(d)(2)(A)(ii) shall constitute service of process. The actions described in 15 U.S.C. § 1125(d)(2)(A)(ii)(II) include "(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and (bb) publishing notice of the action as the court may direct promptly after filing the action."

On September 6 and 7, 2022 plaintiff sent letters to the physical and email addresses provided by the registrants of the defendant domain names stating that plaintiff had filed a lawsuit in this district, attaching a copy of the complaint, and providing notice of plaintiff's intent to proceed *in rem*. (Docket no. 5-1 ¶¶ 6–7). Where the registrant provided no information, plaintiff sent the letters to the registrar's address. (*Id.* ¶ 7). Plaintiff also sent separate notices to the online contact portals listed in the WhoIs records. (*Id.*). Following the court's order directing plaintiff to publish the order in *The Washington Times* or *The Washington Post* and providing the order through email and/or electronic portal to the registrant(s) of the defendant domain names (Docket no. 8), plaintiff filed a declaration that the order was published in *The Washington Times* on September 28, 2022 and was served on the registrants by email, to that extent the registrants made their contact information available in the WhoIs records, and online portal on that same day (Docket no. 11 ¶¶ 5–6; *Id.* at 10). Accordingly, the undersigned recommends a finding that service of process has been accomplished as set forth in 15 U.S.C. § 1125(d)(2)(B).

## Grounds for Entry of Default

In accordance with Federal Rule of Civil Procedure 12(a) and the notice published in *The Washington Times*, anyone making a claim to the defendant domain names was required to file a responsive pleading by October 19, 2022; twenty-one (21) days after the notice of action was published. No responsive pleading has been filed, and the time for doing so has since expired. On October 20, 2022, plaintiff filed a request for entry of default against the defendant domain names. (Docket no. 12). Thereafter, the Clerk of Court entered a default against the defendant domain names on October 21, 2022. (Docket no. 14).

For the reasons stated above, the undersigned magistrate judge recommends a finding that notice of this *in rem* action was proper and that no one has made a timely claim to the defendant domain names, and that the Clerk of Court properly entered a default as to the defendant domain names.

## Liability

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Given that a default has been entered, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6).

Plaintiff has established a violation of the ACPA. A necessary predicate to an ACPA action is that a plaintiff has a protectable interest in a trademark. *See Wagner v. lindawagner.com*, 202 F. Supp. 3d 574, 580–81 (E.D. Va. 2016). As an initial matter, plaintiff contends that it owns the exclusive right to the BLACKROCK mark in U.S. commerce. (Compl. ¶¶ 64–65). Plaintiff owns multiple trademark registrations of the BLACKROCK formative mark on the Principal Trademark Register of the U.S. Patent and Trademark Office. (Compl. ¶ 64). Several of these marks have also achieved incontestable status, making them conclusive

evidence of the validity of the marks, of plaintiff's ownership of the marks, and of plaintiff's exclusive right to use the mark in U.S. commerce. (Compl. ¶ 65); *see* 15 U.S.C. § 1065 (stating that a mark is incontestable when "such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce," provided certain conditions are met).

To establish an ACPA violation, plaintiff is required to (1) prove that registrant(s) had bad faith intent to profit from using the defendant domain names, and (2) that the defendant domain names are identical or confusingly similar to, or dilutive of, the distinctive marks owned by plaintiff. 15 U.S.C. § 1125(d)(1)(A); *see People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). In determining whether a defendant acted in bad faith, a court may consider several factors, including:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the *bona fide* offering of any goods or services;
>
> (IV) the person's *bona fide* noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain

>name in the *bona fide* offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
>
>(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
>(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
>(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i); *see People for Ethical Treatment of Animals*, 263 F.3d at 368–69.

First, plaintiff has established that the registrant(s) possessed the requisite bad faith intent to profit from the defendant domain names. (Compl. ¶ 84; Docket no. 16 at 13–14). Defendant domain names do not reflect the trademark or intellectual property rights of the registrant(s), and they do not reflect the legal name of the registrant(s). The defendant domain names, in using domain names that are confusingly similar to the BLACKROCK mark, are attempting to divert consumers intending to access plaintiff's website to their websites instead. Many of the websites also have pay-per-click links or automatically redirect to a third-party website for a sales solicitation. The defendant domain names also have no noncommercial or fair use of the mark in a site accessible under the domain name. Lastly, almost all of the registrant(s) took steps to conceal their identifying and contact information when applying for the registration of the defendant domain names.

Second, plaintiff has established that the defendant domain names are confusingly similar to the distinctive marks owned by plaintiff. (Docket no. 16 at 12–13). The defendant domain names use the BLACKROCK mark combined with descriptive term(s), a typographical error of the BLACKROCK mark, insertion of unnecessary grammar, or a combination of these tactics. Each of these approaches provide for defendant domain names that are confusingly similar to the BLACKROCK mark. *See Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) ("In assessing whether a mark is confusingly similar, the allegedly infringing domain name does not need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar.") (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 936 (4th Cir. 1995)); *Central Source LLC v. annualdcreditreport.com*, 2014 WL 3811162, at *7 (E.D. Va. Aug. 1, 2014) (finding that the defendant domain names satisfy the confusingly similar test where the "misspelling of the AnnualCreditReport mark constitutes a clear attempt at typosquatting of the AnnualCreditReport mark insofar as omitting or inserting a letter or letters from the word 'AnnualCreditReport,' altering the order of the letters in the word 'AnnualCreditReport,' or substituting a different letter in the world 'AnnualCreditReport' takes advantage of common errors made in typing by consumers when attempting to reach <annualcreditreport.com>.").

For the defendant domain names that use descriptive terms with the BLACKROCK mark, the descriptive term is often one related to the financial industry or plaintiff's programs. In each of these defendant domain names, the BLACKROCK mark is the dominant portion of each domain name. Therefore, these the domain names confusingly similar to the mark. For the defendant domain names that use a typographical error or insertion of unnecessary grammar, a review of the defendant domain names demonstrates that the registrant(s) are attempting to

13

capitalize on common errors made in typing by consumers when attempting to reach plaintiff's website at www.BLACKROCK.com. These defendant domain names are also confusingly similar to the mark.

For these reasons, the undersigned recommends a finding that plaintiff has established a violation of the ACPA.

## Relief

In this *in rem* action, plaintiff seeks an order directing VeriSign and Public Interest Registry to change the registrars of record for the defendant domain names to plaintiff's domain name registrar of choice, CSC Corporate Domains, Inc, and direct CSC Corporate Domains, Inc. to take all necessary steps to have plaintiff listed as the registrant of the defendant domain names. (Docket no. 16 at 1). Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." This court has previously ordered the transfer of domain names where those domain names infringe on valid trademarks. *See Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 490 (E.D. Va. 2002). Given that plaintiff has established a violation of the ACPA through the registration and use of the defendant domain names, the undersigned recommends an order requiring VeriSign, Inc. and Public Interest Registry to change the registrars of record for the defendant domain names to CSC Corporate Domains, Inc. and the CSC Corporate Domains, Inc. take all steps necessary to have BlackRock, Inc. listed as the registrant for the defendant domain names.

## Conclusion

For the reasons stated above, the undersigned recommends that a default judgment be entered in favor of plaintiff and against each of the defendant domain names pursuant to Count I alleging a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(C), and Count II be dismissed without prejudice. The undersigned recommends it be ordered that VeriSign, Inc. and Public Interest Registry, as registries for the following domain names, change the registrars of record for the defendant domain names to CSC Corporate Domains, Inc. and that CSC Corporate Domains, Inc. take all necessary steps to have BlackRock, Inc. listed as the registrant for domain names BLACKROCKINVESTMENTS.COM, BLACKROCKINVESTORS.COM, BLACKROCKBANK.COM, BLACKROCKFINANCIALCORP.COM, BLACKROCKMONEY.COM, BLACKROCKEQUITYPARTNER.COM, BLACKROCKFUNDING.COM, BLACKROCKHOLDINGINVESTMENTS.COM, BLACKROCKBANKS.COM, BLACKROCKTRADELLP.COM, BLACKROCK-PSA.COM, BLACKROCK-INVESTMENT.COM, BLACKROCKBITCOIN.COM, BLACKROCKUKINVESTMENT.COM, BLACKROCKCAPITALSOLUTIONSLLC.COM, BLOCKROCKCAPITAL.COM, BLACKROCK-FUND.COM, BLACKROCKBROKER.COM, BLACKROCKBROKERAGEFIRM.COM, BLACROCK.NET, MYBLACKROCKISHARES.COM, BLACK-ROCK-INVEST.COM, BLACKROCKINVESTMENTSGROUP.COM, BLACKSOCK-INVEST.COM, FUNDBLACKROCK.COM, BLACKROCKFINANCIALADVISERS.COM, BLACKROCKFINANCIALADVISORS.COM, BLACKROCKLOAN.COM, BLACKROCK-STOCK.COM, BLACKROCKE.COM, BLACKROCKDIGITALASSETS.COM,

BLACKROCKINVEST.ORG, BLACKRPCK.COM, BLACKROCK-INVEST.COM, BLACKROK.COM, BLACKROCKGLOBALINVESTMENT.COM, and BLACKROCKVESTMENT.COM.

### Notice

The parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Counsel for plaintiff is directed to send a copy of these proposed findings of fact and recommendations to the registrants at the email and postal addresses and online contact portals provided by the registrant(s) to the registrars, as reflected in the Declaration of Adrienne J. Kosak (Docket no. 5-1, ¶¶ 6–7), and file a certificate of service with the court indicating the date those copies were sent.

ENTERED this 18th day of November, 2022.

/s/
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia